Abraham J. Gellinoff, J.
The Attorney-General brings this action to annul a plan to convert an apartment building to co-operative ownership, and for related relief. He alleges that defendants, the sponsors of the plan, engaged in fraudulent practices in obtaining agreements to purchase by the required number of tenants (Rent Stabilization Code, § 61), and in depriving the nonpurchasing tenants of occupancy.
The material facts are not seriously disputed. Defendants engaged in conduct which they concede ¡was illegal, but which they protest was the result of ignorance rather than fraud. They i‘ ‘ leased ’ ’ vacant apartments in the building to various relatives, friends and business associates. These ■“ tenants”— who never in fact lived in the building — then agreed to purchase their apartments, under an arrangement with defendants that they would participate in profits from the resale of their apartments, but that losses would be absorbed by defendants. Defendants counted these ‘ ‘ purchasers ’ ’ as purchasing tenants in purported compliance with the requirement that 35% of the tenants in occupancy agree to purchase their apartments, so that defendants could declare the co-operative plan effective. Defendants thereupon did declare the plan effective, and subsequently obtained many more agreements to purchase from bona fide tenants.
Defendants’ assertion that they acted in good faith, and were unaware that discriminatory inducements were prohibited, fails to excuse their conduct. And, considering the substantial business ¡experience of the sponsors, and the fact that they were assisted by an experienced sales agent, and eminent counsel, their protestations of ignorance are wholly unpersuasive.
Ho more meritorious is defendants’ assertion that the plan is valid despite the fraud because, after declaring the plan effective, they obtained sufficient ‘ ‘ untainted ’ ’ agreements to purchase from bona fide tenants to meet the 35% requirement. These agreements can hardly be designated “ untainted ”, since defendants obtained them at the very time they were misleading the tenants by incorrectly asserting that the plan already was effective.
*251 As the Court of Appeals observed in Richards v. Kaskel (32 N Y 2d 524, 537): “ ‘ Obviously, the most obsessing fear of a tenant confronted with a co-operative proposal, and the most paralyzing weapon in the arsenal of the promoter * * * is the possibility that 80% of the tenants [the percentage there required] will purchase stock and that immediate application will be made for the eviction of the nonpurchasing tenants. In a tight rental market, when it is most difficult to obtain comparable dwelling space, tenants check the sales to their cotenants; and if they feel that substantial progress is being made toward procuring the dreaded percentage, many will perforce capitulate. ’ Or, as Judge Markowitz put it in the course of his opinion below, * Once the word was passed that the requisite 35% had signed up, other tenants, to protect their homes, inevitably joined the buyers. ’ ” Similarly here, the sales that followed the false declaration of effectiveness inevitably resulted from the pressure improperly created. Accordingly, they may not be counted toward the 35% requirement.
Thus, on such record, the court would ordinarily grant judgment to plaintiff without hesitation, would declare the plan void, and would enjoin further sales under it. However, defendants declared the plan effective in June, 1971, and, largely as the result of procedural roadblocks erected by defendants, plaintiff was prevented from uncovering all the facts until now. During this time, various innocent persons have purchased shares in the co-operative, many nonpurchasing tenants have vacated, and, as the result of summary proceedings instituted by defendants, several nonpurchasing tenants, agreeing to vacate by certain dates, have executed a court approved settlement which provides for a stay of eviction until those dates.
Therefore, while “ the spectacle of an individual enjoying property acquired by means of an admitted fraud is not one which appeals with any great force to the sympathies of a court in a civilized land ” (Richards v. Kaskel, 32 N Y 2d 524, 539, supra), to simply annul the plan would be unfair to the innocent purchasers of shares who willingly purchased. Yet, to ratify the fraudulent plan would be unfair to the tenants who either were frightened into purchasing, or who have been or soon will be forced to vacate their homes. It is necessary, then, in this equity action, to fashion a remedy which will be fair to all innocent parties.
Accordingly, the court rules as follows:
*252 All nonpurchasing tenants now in the building, who have not bound themselves to vacate ,by a certain date pursuant to a settlement in a summary proceeding, shall be permitted to occupy their apartments as rent stabilized tenants, with all rights, including the right to renewal, provided by law for such tenants (Administrative Code of City of New York, tit. YY).
All former tenants who are now owners of shares in the co-operative, and whose agreements to purchase were obtained after the declaration of effectiveness, shall be entitled to rescind their purchases. And, should they elect such rescission, they shall be permitted to occupy their apartments as rent stabilized tenants, with all rights, including the right to renewal, provided by law for such tenants. In this respect it should be noted that, during plaintiff’s investigation, defendants did make an offer of rescission to all purchasers. However, since, at that time, a purchaser’s opting for rescission would also have required vacating the apartment, that offer was not a meaningful one.
All owners of shares in the co-operative, including those purchasing tenants who do not elect rescission, shall remain owners.
Vacant apartments may be sold with a new amendment, acceptable to the Attorney-General (see General Business Law, § 352 et seq.), provided, however, that tenants who vacated their apartments after the declaration of effectiveness shall have the right of first refusal as to any apartments now vacant or to become vacant. Any former tenant who elects to return shall be permitted to do so as a rent stabilized tenant, and shall have all the rights, including the right to renewal, provided by law for such tenants.
As to those tenants who entered into stipulations approved by the Civil Court in the summary proceedings brought against them by defendants, this court may not alter the terms of those stipulations in the present action. The affected tenants, however, shall be afforded an opportunity to apply in the Civil Court to vacate the settlements. Such tenants as succeed in vacating the settlements shall be permitted to occupy their apartments as rent stabilized tenants, and shall have all the rights, including the right to renewal, provided by law for such tenants. In the meanwhile, and pending their prompt application in the Civil Court, the eviction of such tenants is hereby stayed until further order of this court.
In the above dispositions, the court has sought to balance the rights of the innocent tenants and the innocent purchasers. However, the result will be that defendants remain, despite their *253 fraudulent practices, with a great portion of their profits. For the building shall remain a co-operative, and vacant apartments may, to the extent above indicated, be sold. Under the circumstances, and in order that fraud be not rewarded, the court enjoins the defendant sponsors from directly or indirectly engaging in or sponsoring further co-operative or condominium offerings for a period of five years from the date of the order to be entered herein. However, considering the sponsors’ claims that .both with respect to this building and another co-operative they have sponsored, their conduct has been exemplary since the fraud herein, the sponsors may move, aftei two years from the date of the order to be entered herein, for the suspension of the remaining period.